Slip Op. 22-140

## UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| MS SOLAR INVESTMENTS, LLC, and its affiliates, successors, and assigns, | |
| **Plaintiff,** | |
| v. | |
| UNITED STATES; UNITED STATES DEPARTMENT OF COMMERCE; GINA M. RAIMONDO, SECRETARY OF COMMERCE; UNITED STATES CUSTOMS & BORDER PROTECTION; TROY A. MILLER, ACTING COMMISSIONER, | Before: Jennifer Choe-Groves, Judge<br><br>Court No. 21-00303 |
| **Defendants.** | |

## OPINION

[Granting Defendants' Motion to Dismiss without prejudice.]

Dated: December 12, 2022

Mark D. Herlach, Olivia Pribich, Eversheds Sutherland (US) LLP, of Washington, D.C., for Plaintiff MS Solar Investments, LLC.

Bryan M. Boynton, Assistant Attorney General, U.S. Department of Justice, of Washington, D.C., for Defendant United States.  With him on the brief were Patricia M. McCarthy, Director, Justin R. Miller, Attorney-In-Charge, International Trade Field Office, Aimee Lee, Assistant Director, and Marcella Powell, Senior Trial Counsel, International Field Office, Commercial Litigation Branch.  Of

counsel on the brief were <u>Leslie M. Lewis</u>, Attorney, Office of Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, and <u>Sabahat Chaudhary</u>, Attorney, Office of the Assistant Chief Counsel, International Trade Litigation, U.S. Customs and Border Protection.

Choe-Groves, Judge: This case involves a challenge to an antidumping duty order on solar cells from the People's Republic of China ("China").  Before the Court is Defendants' Motion to Dismiss ("Defs.' Mot. Dismiss"), filed by Defendants United States, United States Department of Commerce, Secretary of Commerce Gina M. Raimondo, United States Customs and Border Protection, and Acting Commissioner Troy A. Miller (collectively, "Defendants").  Defs.' Mot. Dismiss, ECF Nos. 49, 50.  Defendants' Motion to Dismiss was filed in response to Plaintiff's First Amended Complaint ("Pl.'s First Amended Compl.") filed by Plaintiff MS Solar Investments, LLC ("MS Solar").  Pl.'s First Amended Compl., ECF No. 47.  For the reasons set forth below, the Court grants Defendants' Motion to Dismiss without prejudice.

## <u>BACKGROUND</u>

On December 7, 2012, the United States Department of Commerce ("Commerce") published an antidumping duty order on solar cells from China. <u>See</u> <u>Crystalline Silicon Photovoltaic Cells, Whether or Not Assembled Into Modules, From the People's Republic of China</u>, 77 Fed Reg. 73018 (Dep't of Commerce Dec. 7, 2012) (amended final determination of sales at less than fair value, and antidumping duty order).  On December 3, 2013, Commerce published

a notice of opportunity to request an administrative review of the antidumping

order for the period of May 25, 2012, to November 30, 2013.  See Antidumping or

Countervailing Duty Order, Finding, or Suspended Investigation; Opportunity to

Request Administrative Review ("Opportunity Notice"), 78 Fed. Reg. 72636,

72638 (Dep't of Commerce Dec. 3, 2013).  In the Opportunity Notice, Commerce

stated that interested parties should be aware of Commerce's policy under which

solar cells entering the United States would be liquidated at the China-wide entity

rate if an individually examined exporter did not report the merchandise in its U.S.

sales database submitted to Commerce during the review.  Id. at 72,638; see also

Non-Market Economy Antidumping Proceedings: Assessment of Antidumping

Duties ("Assessment Policy"), 76 Fed. Reg. 65694, 65694–95 (Oct. 24, 2011).

Commerce published a notice initiating a first administrative review of the

antidumping duty order, in which MS Solar requested that Commerce review

entries of subject merchandise by Yingli Energy China Company Limited

("Yingli"), Tianwei New Energy (Chengdu) PV Module Co., Ltd., Upsolar Group

Co. Limited, and Sun Earth Solar Power Co., Ltd.  Initiation of Antidumping and

Countervailing Duty Administrative Reviews and Request for Revocation in Part

("Initiation Notice"), 79 Fed. Reg. 6147, 6150–52 (Dep't of Commerce Feb. 3,

2014).  In the Initiation Notice, Commerce stated that in proceedings involving

non-market economies such as China, there is a rebuttable presumption that all

companies within the non-market economy country are subject to government
control and are assigned the non-market economy country-wide rate unless the
exporter under review submits a separate rate application or certification
demonstrating that the exporter is sufficiently independent from government
control of its export activities.  Id. at 6148; see also Import Administration, U.S.
Dep't of Commerce, Separate-Rates Practice and Application of Combination
Rates in Antidumping Investigations Involving Non-Market Economy Countries,
Policy Bulletin 05.1 (2005) available at
https://enforcement.trade.gov/policy/bull05-1.pdf.  Commerce explained in the
Federal Register Notice for the Preliminary Results that upon publication of the
final results of review, Commerce would issue importer-specific liquidation
instructions for the entries of subject merchandise exported by Yingli as reported
in its U.S. sales database.  See Crystalline Silicon Photovoltaic Cells, Whether or
Not Assembled Into Modules, from the People's Republic of China ("Preliminary
Results"), 80 Fed. Reg. 1021, 1025 (Dep't of Commerce Jan. 8, 2015) (preliminary
results of antidumping duty admin. review and preliminary determination of no
shipments; 2012–2013).  Commerce stated that for entries that were not reported in
the U.S. sales database submitted by an exporter individually examined during the
review, Commerce would instruct U.S. Customs and Border Protection

("Customs") to liquidate entries at the China-wide entity rate in accordance with

the Assessment Policy.  Id.

Commerce determined a dumping margin rate of 238.95% as the China-wide

entity rate that applied to all manufacturers and exporters subject to investigation

that were not explicitly assessed a lower rate.  Crystalline Silicon Photovoltaic

Cells, Whether or Not Assembled Into Modules, from the People's Republic of

China ("Final Results"), 80 Fed. Reg. 40,998, 41002 (Dep't of Commerce July 14,

2015) (final results of antidumping duty administrative review and final

determination of no shipments; 2012–2013).  Yingli, an individually investigated

exporter, was assessed a weighted-average dumping margin of 0.79%.  Id.  Yingli

did not report MS Solar's sale in its U.S. sales database.  Pl.'s First Amended

Compl. at 17.  MS Solar was not individually investigated.  See Final Results 80

Fed. Reg. at 41,001.

On April 22, 2019, Commerce directed Customs to apply the China-wide

entity rate of 238.95% to MS Solar's imports of solar panels manufactured and

exported by Yingli.  U.S. Department of Commerce's liquidation message

9112305 ("Yingli Liquidation Instructions") dated April 22, 2019.  This resulted in

a net antidumping charge of $621,581.44 against MS Solar.  Pl.'s First Amended

Compl. at 10.

MS Solar commenced this case on June 28, 2021, alleging that Commerce instructed Customs improperly in the Yingli Liquidation Instructions that assessed the China-wide entity rate against MS Solar's imports from Yingli.  Id. at 3.

## DISCUSSION

MS Solar contends that the Court has jurisdiction pursuant to 28 U.S.C. § 1581(i).  Defendants filed a Motion to Dismiss pursuant to USCIT Rule 12(b)(1) for lack of subject matter jurisdiction and USCIT Rule 12(b)(6) for failure to state a claim.  When the court is presented with motions to dismiss under both USCIT Rule 12(b)(1) and Rule 12(b)(6), the court generally decides the 12(b)(1) motion first because "[w]hether the complaint states a cause of action on which relief could be granted is a question of law and just as issues of fact it must be decided after and not before the court has assumed jurisdiction over the controversy."  Bell v. Hood, 327 U.S. 678, 682 (1946).

### I.    Motion to Dismiss for Lack of Jurisdiction Pursuant to USCIT Rule 12(b)(1)

Determining the Court's subject matter jurisdiction is a threshold inquiry. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95 (1998).  The U.S. Court of International Trade, like all federal courts, is one of limited jurisdiction and is "presumed to be 'without jurisdiction' unless the 'contrary appears affirmatively from the record.'"  DaimlerChrysler Corp. v. United States, 442 F.3d

1313, 1318 (Fed. Cir. 2006) (quoting King Iron Bridge & Mfg. Co. v. Otoe Cty.,

120 U.S. 225, 226 (1887)).  The party invoking federal court jurisdiction must

allege sufficient facts to establish the court's jurisdiction and therefore bears the

burden of establishing it.  Id.

The U.S. Court of International Trade is empowered to hear civil cases

brought against the United States under the authority enumerated in 28 U.S.C.

§ 1581.  See 28 U.S.C. § 1581.  Plaintiff contends that the Court has jurisdiction

pursuant to the residual jurisdiction clause under 28 U.S.C. § 1581(i), which

provides in relevant part:

> (i)  In addition to the jurisdiction conferred upon the Court of
> International Trade by subsections (a)–(h) of this section and subject
> to the exception set forth in subsection (j) of this section, the Court of
> International Trade shall have exclusive jurisdiction of any civil
> action commenced against the United States, its agencies, or its
> officers, that arises out of any law of the United States providing for –
> (A)  revenue from imports or tonnage;
> (B)  tariffs, duties, fees, or other taxes on the importation of
> merchandise for reasons other than the raising of revenue;
> (C)  embargoes or other quantitative restrictions on the importation
> of merchandise for reasons other than the protection of the
> public health or safety; or
> (D)  administration and enforcement with respect to the matters
> referred to in paragraphs (A)–(C) of this subsection and
> subsections (a)–(h) of this section.

28 U.S.C. § 1581(i).

Plaintiff's action purports to challenge the liquidation instructions given by

Commerce to Customs, while Defendants allege that Plaintiff actually seeks to

challenge the final determination made by Commerce during an antidumping

investigation.  Pl.'s First Amended Compl. at 1; Defs.' Mot. Dismiss at 10.

28 U.S.C. § 1581(c) grants the U.S. Court of International Trade with

jurisdiction over actions commenced under section 516A or 517 of the Tariff Act

of 1930.  28 U.S.C. § 1581(c).  A remedy under 28 U.S.C. § 1581(c) may be

available to a plaintiff after Commerce issues a final determination, and this

remedy could adequately address the claims.  Therefore, if jurisdiction under 28

U.S.C. § 1581(c) is available, the Court cannot exercise jurisdiction over the action

pursuant to 28 U.S.C. § 1581(i).  Subsection (i) provides "residual" jurisdiction,

granted "in addition to the jurisdiction conferred upon the Court of International

Trade by subsections (a)–(h)[.]"  Erwin Hymer Grp. N. Am., Inc. v. United States,

930 F.3d 1370, 1373 (Fed. Cir. 2019); 28 U.S.C. § 1581(i).  If the Court has

subsection (c) jurisdiction, but the remedy provided therein is "manifestly

inadequate," then jurisdiction under subsection (i) may exist.  Erwin Hymer, 930

F.3d at 1374–75; see also Chemsol, LLC v. United States, 755 F.3d 1345, 1349

(Fed. Cir. 2014).  The scope of the Court's residual jurisdiction under 28 U.S.C.

§ 1581(i) is limited.  Erwin Hymer, 930 F.3d at 1374.  The U.S. Court of Appeals

for the Federal Circuit has "repeatedly held that subsection (i)(4) 'may not be

invoked when jurisdiction under another subsection of § 1581 is or could have

been available, unless the remedy provided under that other subsection would be

manifestly inadequate." Ford Motor Co. v. United States, 688 F.3d 1319, 1323

(Fed. Cir. 2012) (quoting Miller & Co. v. United States, 824 F.2d 961, 963 (Fed.

Cir. 1987)); see also Chemsol, 755 F.3d at 1349.

As the statute and case law make clear, any § 1581(i) inquiry requires

answering two questions: (1) whether jurisdiction is available under a different

subsection; and (2) if so, the question then becomes whether the remedy provided

under that subsection is "manifestly inadequate." Erwin Hymer, 930 F.3d at 1375.

If the Court has jurisdiction pursuant to a provision in § 1581(a)–(h), and the

remedy provided therein is not manifestly inadequate, then the Court lacks residual

jurisdiction under § 1581(i). Id.

In defining manifest inadequacy, the U.S. Court of Appeals for the Federal

Circuit has established that "mere allegations of financial harm . . . do not make the

remedy established by Congress manifestly inadequate[.]" Int'l Custom Prods. v.

United States, 467 F.3d 1324, 1327 (Fed. Cir. 2006) (quoting Miller & Co., 824

F.2d at 964). Manifest inadequacy may be established when the protest is an

"exercise in futility, or 'incapable of producing any result; failing utterly of the

desired end through intrinsic defect; useless, ineffectual, vain.'" Hartford Fire Ins.

Co. v. United States, 544 F.3d 1289, 1294 (Fed. Cir. 2008).

In order to determine whether § 1581(c) jurisdiction exists, the Court must

"look to the true nature of the action . . . in determining jurisdiction of the appeal."

Sunpreme Inc. v. United States, 892 F.3d 1186, 1193 (Fed. Cir. 2018) (citing

Norsk Hydro Can., Inc. v. United States, 472 F.3d 1347, 1355 (Fed. Cir. 2006)

(quoting Williams v. Sec'y of Navy, 787 F.2d 552, 557 (Fed. Cir. 1986)).  The

Court inquires whether the complainant is challenging the Final Results of the

administrative review, or the application of those results.  See Consol. Bearings

Co. v. United States, 348 F.3d 997, 1002 (Fed. Cir. 2003) (holding that because

"[the plaintiff] did not bring this action to challenge the final results of the

administrative review" but rather "a challenge to the 1998 instructions, which is

not an action defined under section 516A of the Tariff Act" jurisdiction under

subsection (i) was proper); see also Shinyei Corp. of Am. v. United States, 355

F.3d 1297, 1305 (Fed. Cir. 2004) (holding that § 1581(i) provided the U.S. Court

of International Trade with jurisdiction over the case, because "an action

challenging Commerce's liquidation instructions is not a challenge to the final

results, but a challenge to the 'administration and enforcement' of those final

results").

### A. MS Solar's Duty Rate as an Importer (Counts I & II)

MS Solar argues under Counts I and II of the First Amended Complaint that

it is entitled to a lower antidumping duty rate as an importer of goods.  Pl.'s First

Amended Compl. at 15–17.  MS Solar asserts that the Court has § 1581(i)

jurisdiction by framing its suit as a challenge to the Yingli Liquidation Instructions,

rather than to Commerce's <u>Final Results</u>.  <u>Id.</u> at 1, 10–11.  MS Solar argues that

because Yingli was an individually reviewed exporter who ultimately "received a

company specific rate of 0.79% in the final results of the antidumping duty

administrative review for the review period covering May 25, 2012, through

November 30, 2013," the higher rate assessed to MS Solar at the China-wide entity

rate in the Yingli Liquidation Instructions was incorrect and MS Solar should have

received the lower rate assigned to Yingli.  <u>Id.</u> at 2.  MS Solar contends that during

the administrative review, MS Solar made a request to Yingli to report the single

relevant sale to Commerce in order to receive the company-specific rate, rather

than the China-wide entity rate.  <u>Id.</u> at 9.  MS Solar was aware that Yingli only

mentioned MS Solar's sale in a footnote within Yingli's questionnaire response.

<u>See</u> <u>id.</u> at 2, 9 (noting that Yingli "reported the sale in its administrative review

questionnaire" and that "MS Solar coordinated with Yingli to report the sale to

Commerce consistent with the NME policy"); Defs.' Mot. Dismiss at 16 (noting

that the relevant sale was reported only in a "cursory footnote" in Yingli's

questionnaire response).  Yingli failed to include the MS Solar sale in its U.S. sales

database reported to Commerce.  Pl.'s First Amended Compl. at 11.  According to

MS Solar, Commerce's oversight in recognizing MS Solar's sale, despite its

absence from Yingli's U.S. sales database, resulted in MS Solar receiving the

incorrect China-wide entity rate of 238.95% rather than the allegedly correct

Yingli-specific rate of 0.79%.  Id.  MS Solar faults the Yingli Liquidation

Instructions, alleging that Commerce either: (1) reviewed the sale and mistakenly

did not add MS Solar to the Yingli Liquidation Instructions as an entity entitled to

a lower rate, rather than the PRC-wide rate; or (2) misapplied the Assessment

Policy in creating the Yingli Liquidation Instructions.  Id.

     Defendants argue to the contrary that the Court lacks subject matter

jurisdiction under § 1581(i) because "the true nature of this action is a challenge to

the assessment rate determined by Commerce in its Final Results."  Defs.' Mot.

Dismiss at 10.  Defendants assert that Plaintiff specifically contests the rate of

antidumping duty assessed against a single entry of solar cells imported from

China and exported by Yingli.  Id. at 1.  Defendants contend that "the Amended

Complaint fails to allege any error that could not have been appropriately

challenged and heard in an action under § 1581(c) involving the administrative

review."  Id. at 10.

     Defendants argue that Commerce published the Assessment Policy in the

Federal Register, and that MS Solar should have been aware of Commerce's policy

that any merchandise underlying a particular entry that Yingli did not report in its

U.S. sales database would be liquidated at the China-wide entity rate.  Id. at 5.

Defendants note that MS Solar entered an appearance at the beginning of the

administrative review as a U.S. importer interested party, and therefore MS Solar

had access to the <u>Preliminary Results</u> and to Yingli's U.S. sales database on the

record through MS Solar's authorized representative and interested party status.

<u>Id.</u> at 3–5.  Defendants emphasize that Yingli's U.S. sales database did not report

any sales of merchandise to MS Solar during the relevant period of review.  <u>Id.</u> at

9.  Defendants argue that MS Solar could have, but did not, submit comments to

Commerce on the preliminary assessment rates or the fact that MS Solar's sale was

not included in Yingli's U.S. sales database on the record.  <u>Id.</u> at 5–6.  Defendants

acknowledge that Yingli mentioned MS Solar's sale in a footnote in Yingli's

questionnaire response, and not in Yingli's U.S. sales database.  <u>Id.</u> at 9–10.

Defendants assert that "[t]he crux of MS Solar's Amended Complaint is that,

during the administrative review, Commerce should have considered the

information contained in that footnote, and Commerce should have applied

Yingli's importer-specific rate to MS Solar's entry."  <u>Id.</u> at 10.

Defendants argue further that the true nature of the present action is a

challenge to Commerce's antidumping duty rate assessed and applied to MS

Solar's entry in accordance with Commerce's <u>Assessment Policy</u> and <u>Final</u>

<u>Results</u>.  <u>Id.</u> at 14.  Defendants claim that jurisdiction under § 1581(i) is not

appropriate because "the final results of an administrative review 'shall be the

basis for the assessment of . . . antidumping duties on entries of merchandise

covered by the determination . . . .'"  <u>Id.</u> (citing 19 U.S.C. § 1675(a)(2)(C)).  Thus,

Defendants argue that "MS Solar should have raised any such challenge during the administrative proceeding." Id.  Defendants assert that MS Solar's lack of participation in the administrative review was the direct cause of its unfavorable rate assessment, thus placing its grievance squarely within the scope of § 1581(c). See id. at 16.

The Court concludes that Defendants' characterization of the dispute, not Plaintiff's, accurately reflects the true nature of the claim in this action.  The underlying issue in this case is an error in the record that influenced the Final Results, specifically the failure of Yingli to include information about MS Solar's sale in Yingli's U.S. sales database on the record.  The true nature of the issue in dispute is not a problem with Commerce's liquidation instructions or an error in Customs' administration and enforcement, because Commerce's failure to issue importer-specific liquidation instructions for the entries of subject merchandise exported by Yingli as reported in its U.S. sales database stems from an error in Yingli's original reporting of information on the record.  MS Solar alleges that "[t]o the extent that Commerce reviewed the sale and mistakenly did not add MS Solar to the list of importers that received a specific rate in the Yingli Liquidation Instructions, such action was in error."  Pl.'s First Amended Compl. at 11.  The Court observes that MS Solar's challenge is to Commerce's review of information on the administrative record that caused Commerce to not provide MS Solar with a

specific rate in the Yingli Liquidation Instructions.  See Id.  MS Solar also claims

that "[a]lternatively, to the extent that Commerce did not review the sale at all,

such an act" was also in error.  Id.  This argument also challenges Commerce's

review, or lack of review, of information on the administrative record that caused

an alleged error in not providing MS Solar with a specific rate in the Yingli

Liquidation Instructions.

 The Yingli Liquidation Instructions were not at fault here; rather, Commerce

issued liquidation instructions based on the Final Results of an administrative

review that failed to include information critical to MS Solar, namely, the inclusion

of MS Solar on the list of Yingli's importers in the U.S. sales database on the

record as required by the Assessment Policy.  See Intercont'l Chems., LLC v.

United States, 44 CIT __, __, 483 F. Supp. 3d 1232, 1240 (2020) ("ICC was 'not

reported in the U.S. sales databases submitted by . . . Fufeng.' . . . ICC could have

challenged Commerce's Final Results under §1581(c); ICC could have participated

in the administrative proceeding.  Because ICC failed to pursue either of these

options, it is barred . . . from invoking jurisdiction under § 1581(i)").  Similarly,

because the true nature of MS Solar's dispute is an error in the record that resulted

in liquidation instructions based on the Final Results, the only valid basis for

jurisdiction rests on § 1581(c).

Therefore, any claim arising under § 1581(i) should be dismissed for lack of subject matter jurisdiction, absent a showing of such remedy being manifestly inadequate.  Erwin Hymer, 930 F.3d at 1375 (noting that the burden of establishing jurisdiction rests on the party alleging the Court's jurisdiction); see also Norsk Hydro, 472 F.3d at 1355.  In order to establish that a remedy is manifestly inadequate, protest must be an exercise in futility, incapable of producing any result, failing utterly to reach the desired end, or useless, ineffectual, and in vain.  Hartford Fire Ins. Co., 544 F.3d at 1294.  Mere allegations of financial harm do not make the remedy established by Congress manifestly inadequate.  Int'l Custom Prods., 467 F.3d at 1327.

MS Solar argues that any remedy provided other than under § 1581(i) would be manifestly inadequate.  Pl.'s Br. Opp'n Mot. Dismiss ("Plaintiff's Brief" or "Pl.'s Br.") at 16–17, ECF Nos. 51, 52.  MS Solar argues generally that "[a]ppealing Commerce's Final Results when [MS Solar] had confirmation that its sale had been reported to Commerce and a reasonable expectation that it would receive the lower duty rate thus is an example of a 'manifestly inadequate' remedy for the issue at hand."  Id. at 16–17.  MS Solar's manifest inadequacy argument relies on its interpretation that the fault lies in Commerce's liquidation instructions, not in the Final Results, and thus a challenge to the Final Results would be manifestly inadequate according to MS Solar.  Id.

The Court concludes that the remedy provided under § 1581(c) would not be manifestly inadequate.  A claim under § 1581(c) could provide MS Solar with an opportunity to obtain relief for the harm allegedly suffered, were the Court persuaded to remand the case to Commerce to reconsider the information about MS Solar's sale reported in Yingli's U.S. sales database, and whether a corrected liquidation instruction for Yingli should be issued that specifically includes MS Solar.  See 19 U.S.C. § 1516a(c)(3) (permitting the U.S. Court of International Trade to remand Commerce's action for disposition consistent with the final disposition of the court).  The remedy provided for under § 1581(c) is not manifestly inadequate, as it could provide the solution that MS Solar seeks.  The Court notes that MS Solar's desired remedy is primarily financial.  Specifically, MS Solar seeks an order directing Commerce and Customs to apply Yingli's company-specific antidumping duty rate of 0.79% to MS Solar's imports of Yingli panels during the period of review and issue a refund, with interest, of the excess duties paid by MS Solar.  Pl.'s First Amended Compl. at 18.  The Court concludes that a remedy under § 1581(c) would not be manifestly inadequate, incapable of producing any result, or useless, ineffectual, or in vain.  Hartford Fire Ins. Co., 544 F.3d at 1294.  Nor is the harm alleged of a non-financial nature that would render the remedy manifestly inadequate.  Int'l Custom Prods., 467 F.3d at 1327.  The Court concludes that because § 1581(c) jurisdiction was available to MS Solar (and

MS Solar neither challenged the <u>Final Results</u> nor contested the error in Yingli's

U.S. sales database reporting), and the remedy provided therein would not be

manifestly inadequate, subject matter jurisdiction under § 1581(i) is improper.

### B.  MS Solar's Duty Rate as an Exporter (Count III)

In Count III of the First Amended Complaint, MS Solar sets forth an

alternative argument that it is entitled to a separate antidumping duty rate as an

exporter of goods.  Pl.'s First Amended Compl. at 17.  MS Solar argues that it

"timely requested and was eligible for a separate rate because of the absence of

both *de jure* and *de facto* government control" over its "export and resale

activities."  <u>Id.</u> at 3, 9.  MS Solar asserts that its timely separate rate application

should have prompted Commerce to "[direct Customs] to assess imports of

Chinese solar panels by MS Solar at the separate rate of 9.67%, the weighted-

average dumping margin calculated for the two mandatory respondents for the

Review Period."  <u>Id.</u> at 3.

Defendants contend that MS Solar did not request that Commerce conduct a

separate rate review of MS Solar as an exporter.  Defs.' Mot. Dismiss at 4; <u>see</u>

<u>Initiation Notice</u> 79 Fed. Reg. at 6150–6152 (listing all exporters from whom

Commerce received a review request, noting that MS Solar was not included in the

list of proposed exporters for review).  Defendants argue that MS Solar did not

follow the procedures prescribed in the <u>Initiation Notice</u> in order to obtain a

separate rate through the administrative process.  Reply Br. Supp. Defs.' Mot.

Dismiss ("Defendants' Reply Brief" or "Defs.' Reply Br.") at 13–14, ECF No. 55.

The Court notes that there appear to be discrepancies within MS Solar's own

motion regarding whether it is an importer or exporter.  For example, while MS

Solar argues that it is entitled to a separate rate as an *exporter*, it specifically refers

to the relevant solar panels as its own *imports*.  Pl.'s First Amended Compl. at 3

("Commerce should have directed [Customs] to assess *imports* of Chinese solar

panels by MS Solar at the *separate rate of 9.67%*, the weighted-average dumping

margin calculated for the two mandatory respondents [both of whom were

*exporters*] for the Review Period").

Before commencing suit in the U.S. Court of International Trade, an

aggrieved party must exhaust all administrative remedies available to it.  The Court

notes that MS Solar has failed to establish that it raised the issue of whether it is an

exporter during the administrative proceedings.  "A civil action contesting the

denial of a petition under section 516 of the Tariff Act of 1930 may be commenced

in the Court of International Trade only by a person who has first exhausted the

procedures set forth in such section."  28 U.S.C. § 2637(b).  Other than a few

cursory mentions of export activities in Count III of MS Solar's First Amended

Complaint and in its briefing before the Court, the Court observes that Commerce

did not conduct a separate rate review of MS Solar, MS Solar did not present

evidence during the administrative proceedings of its status as an exporter, and

Commerce did not make any determinations regarding MS Solar's separate rate

status.  <u>See</u> Pl.'s First Amended Compl. at 9; <u>see also</u> Defs.' Mot. Dismiss at 4.

Because MS Solar did not exhaust its administrative remedies, the Court is without

jurisdiction over MS Solar's contentions as an exporter.

## II.      Motion to Dismiss for Failure to State a Claim Pursuant to
##          USCIT Rule 12(b)(6)

In order to analyze the merits of a motion to dismiss for failure to state a

claim pursuant to USCIT Rule 12(b)(6), the Court must first have subject matter

jurisdiction over the dispute.  <u>See</u> <u>Bell</u>, 327 U.S. at 682 (1946).  As previously

discussed, the Court holds that subject matter jurisdiction is lacking pursuant to

§1581(i) because with respect to Counts I and II of the First Amended Complaint

§1581(c) jurisdiction is available and the remedy provided therein would not be

manifestly inadequate, and with respect to Count III of the First Amended

Complaint Plaintiff has not exhausted its administrative remedies.  Because the

Court lacks subject matter jurisdiction, the Court cannot analyze the merits of the

12(b)(6) motion to dismiss.

## CONCLUSION

For the reasons discussed above, Defendants' Motion to Dismiss, ECF Nos.

49, 50, is granted without prejudice.  Judgment will be entered accordingly.

<u>/s/      Jennifer Choe-Groves</u>
Jennifer Choe-Groves, Judge

Dated: <u>December 12, 2022</u>
        New York, New York